# STATE OF MICHIGAN

# COURT OF APPEALS

326 LAND COMPANY, LLC,

Plaintiff-Appellant,

v

CITY OF TRAVERSE CITY, CITY OF
TRAVERSE CITY CITY COMMISSION,

Defendants-Appellees,

and

SAVE OUR DOWNTOWN,

Intervening Defendant-Appellee.

UNPUBLISHED
September 27, 2018

No. 339755
Grand Traverse Circuit Court
LC No. 2017-031934-CZ

Before: METER, P.J., and K. F. KELLY and GLEICHER, JJ.

PER CURIAM.

A Traverse City developer filed a declaratory judgment action seeking to invalidate a voter proposal requiring an election before the city could approve the construction of buildings over a certain height. The circuit court allowed a concerned citizens' group to intervene as the city defendants apparently shared the developer's opinion regarding the proposal's constitutionality. The court subsequently dismissed the action without prejudice, finding that the action was not yet ripe for judicial review. We discern no error and affirm.

## I. BACKGROUND

326 Land Company, LLC owns property in downtown Traverse City, three streets back from the bay shoreline, upon which it wishes to develop a 100-foot-tall mixed-use residential building. When 326 purchased the lot, it was zoned C-4c. Buildings in this district must be at least 30-feet tall. To exceed 60 feet, the developer must apply for a special land use permit (SLUP) or develop the land as a planned unit development (PUD). PUDs in district C-4c may be up to 85-feet tall, or up to 100-feet tall if certain construction requirements are met. Traverse City Zoning Ordinance, § 1346.06(a). SLUP applications were reviewed by the city commission, Traverse City Zoning Ordinance, § 1364.01(b), according to specifically enumerated procedures and standards. See Traverse City Zoning Ordinance, §§ 1364.02-1364.04, 1364.07.

-1-

On November 8, 2016, the citizens of Traverse City approved a city charter amendment by initiative petition—Proposal (or Prop) 3. Prop 3 requires "approval by a majority of the electors at a regular or special election" before the city or the city commission approves "the construction of a building with a height above 60 feet."

326 alleged that it spent more than $100,000 since 2015 "making detailed preparations" for its planned building. 326 filed suit against the city and the city commission in January 2017, two months after Prop 3 was passed, challenging the legality of transferring land use approval power from the city commission to the people and seeking a declaratory judgment and writ of superintending control. Save Our Downtown, a citizen group, sought to intervene in the lawsuit because the named defendants actually opposed Prop 3 and therefore would not adequately represent the public's interests. The court granted this motion. At the February 2017 hearing on Save Our Downtown's intervention motion, the group contended that 326's lawsuit was not ripe for review as it "ha[d] not applied for anything from the City" and "the City ha[d] not denied" any application, arousing the circuit court's concerns.

In the months that followed, 326 filed a SLUP application and the city commission scheduled a hearing for August 1, 2017. Five days before that hearing, however, the circuit court dismissed 326's lawsuit without prejudice. The court found that 326's declaratory judgment action was not ripe for judicial review because neither defendants nor the public had voted on or denied 326's SLUP application.

326 now appeals the dismissal of its suit and the circuit court's order allowing Save Our Downtown to intervene in the proceedings.

## II. RIPENESS

We review de novo issues of justiciability and ripeness. *City of Huntington Woods v Detroit*, 279 Mich App 603, 614; 761 NW2d 127 (2008).

> The doctrine of ripeness is designed to prevent the adjudication of hypothetical or contingent claims before an actual injury has been sustained. A claim is not ripe if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all. Hence, when considering the issue of ripeness, the timing of the action is the primary focus of concern. [*Id*. at 615-616 (cleaned up).][1]

Here, 326 sought a declaratory judgment regarding its rights.

---

[1] This opinion uses the new parenthetical (cleaned up) to improve readability without altering the substance of the quotation. The parenthetical indicates that nonsubstantive clutter such as brackets, alterations, internal quotation marks, and unimportant citations have been omitted from the quotation. See Metzler, *Cleaning Up Quotations*, 18 J App Pract & Process 143 (2017).

The purpose of a declaratory judgment is to enable the parties to obtain adjudication of rights before an actual injury occurs, to settle a matter before it ripens into a violation of the law or a breach of contract, or to avoid multiplicity of actions by affording a remedy for declaring in expedient action the rights and obligations of all litigants. [*Rose v State Farm Mut Auto Ins Co*, 274 Mich App 291, 294; 732 NW2d 160 (2006).]

However, "[w]hen there is no actual controversy, the court lacks jurisdiction to issue a declaratory judgment." *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 545; 904 NW2d 192 (2017). "The existence of an 'actual controversy' is a condition precedent to the invocation of declaratory relief." *PT Today, Inc v Comm'r of Office of Fin & Ins Servs*, 270 Mich App 110, 127; 715 NW2d 398 (2006). "Generally, where the injury sought to be prevented is merely hypothetical, a case of actual controversy does not exist." *Citizens for Common Sense in Gov't v Attorney General*, 243 Mich App 43, 55; 620 NW2d 546 (2000).

326's injury was merely hypothetical because it had no way to know whether the voters would reject its SLUP. After all, 326's 100-foot building would be two doors down from the 125-foot Park Place Hotel that was built in the 1920s. The building would sit three streets back from the shoreline and therefore would not necessarily block all views. And, as noted by 326, the citizen group behind Prop 3 is actually interested in preserving the character of another part of downtown. Moreover, 326's SLUP has since made its way to the city commission and could conceivably be placed before the electorate in the near future. As the circuit court dismissed 326's suit without prejudice, 326 could refile in the event the election does not go as desired. The claim was not ripe, however, when filed and we affirm the circuit court's judgment in this regard.

III. INTERVENTION

326 also challenges the circuit court's order permitting Save Our Downtown to intervene in the lawsuit, a decision we review for an abuse of discretion. *Vestevich v West Bloomfield Twp*, 245 Mich App 759, 761; 630 NW2d 646 (2001). A circuit court may grant a motion to intervene "where the intervenor's interests may be inadequately represented by one of the existing parties." *Id*. (cleaned up). "Where this concern exists, the rules of intervention should be construed liberally in favor of intervention." *Id*.

Save Our Downtown presented evidence that defendants shared 326's opinion that Prop 3 is unconstitutional and would not adequately advocate for its protection. Specifically, city commissioners had campaigned against Prop 3 and records obtained under the Freedom of Information Act revealed that the city attorney may have assisted 326 in preparing this lawsuit. This evidence supported a complete lack of adversarial tension between plaintiff and defendants

in this suit, guaranteeing that the intervenor's interests in upholding Prop 3 would not be represented. Accordingly, the circuit court did not abuse its discretion in allowing Save Our Downtown to intervene.

We affirm.

/s/ Patrick M. Meter
/s/ Kirsten Frank Kelly
/s/ Elizabeth L. Gleicher